## UNION TRACTION COMPANY OF INDIANA *v.* BARNETT.

[No. 4,233. Filed April 28, 1903. Rehearing denied October 13, 1903.]

APPEAL.—*Amendment of Complaint Pending Trial.*—*Review.*—An objection to the action of the court in permitting, after trial was begun, an amendment to the complaint, will not be reviewed on appeal, where there is no record entry showing that an amended complaint was filed. *pp. 468, 469.*

SAME.—*Service of Process.*—*Presumption.*—In the absence of a showing to the contrary, it will be presumed on appeal that the summons was served upon the defendant named in the complaint. *p. 469.*

TRIAL.—*General Verdict. — Answers to Interrogatories.— Conflict.*—If the antagonism between a general verdict and the answers to interrogatories returned therewith is not such as to be beyond the possibility of removal by any evidence admissible under the issues, the general verdict must stand. *p. 471.*

SAME.—*General Verdict.—Answers to Interrogatories.— Conflict.—Injury to Pedestrian.—Street Railway.*—In an action by a pedestrian against

a street railway company for injuries sustained while walking across a defective street, the jury returned a general verdict for the plaintiff, and answers to interrogatories showing that the defendant in laying its track had taken up and relaid the brick pavement at the street crossing, and in doing so had not set the bricks as close together as practicable, nor tamped down the gravel between the bricks solidly enough; that the street was lighted, and near the crossing where plaintiff was injured, a red lantern was burning; that the plaintiff was familiar with the street, and knew the work was being done, and knew the significance of the red light; that she crossed the street at the time without looking where she was walking; that there was no red light or danger signal immediately on the crossing to warn plaintiff that it was dangerous; and that plaintiff could not see the loose bricks which caused her to fall. *Held*, that the answers to interrogatories were not in irreconcilable conflict with the general verdict. *pp. 469–472.*

APPEAL.—*Exclusion of Evidence.*—*Harmless Error.*—It is harmless error to strike out proper evidence, where by answers to interrogatories the jury found as a fact that which was sought to be established by the evidence stricken out. *p. 472.*

SAME.—*Admission of Evidence.*—*Notice.*—*Harmless Error.*—In an action by a pedestrian against a street railway company for personal injuries sustained by reason of the failure of the defendant to restore a paved crossing to its former condition, the admission of evidence introduced by plaintiff for the purpose of showing that defendant was notified of the condition of the crossing can not be harmful, since it was the duty of the defendant company to restore the street to its former condition, and it was bound to know whether it had done so. *p. 472.*

From Henry Circuit Court; *W. O. Barnard*, Judge.

Action by Josephine Barnett against the Union Traction Company of Indiana. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. A. VanOsdol, W. A. Kittinger, M. E. Forkner* and *G. D. Forkner*, for appellant.

*E. F. Ritter*, for appellee.

ROBINSON, J.—Appellant appeals from a judgment in appellee's favor for personal injuries.

Objection is first made to the action of the court in permitting, after the trial was begun, an amendment to the complaint, which consisted in inserting in the complaint

Union Traction Co. *v.* Barnett.

after the words "Union Traction Company," the words "of Indiana." The record contains a single paragraph of complaint. It contains no amended complaint, nor is there any record entry that an amended complaint was filed.

The complaint begins: "Josephine Barnett complains of the Union Traction Company of Indiana, and says," etc. It does not appear upon whom summons was served, and, in the absence of some showing to the contrary, it is presumed that it was served upon the defendant named in the complaint.

On August 15, 1900, and for about two weeks prior thereto, appellant was constructing its road north and south along Pendleton avenue, making an excavation about sixteen inches deep and eight feet wide, and extended the same across State street, a brick paved street. State street was paved north in the avenue to the inner line of the sidewalk, and made a walkway across the avenue on a line with the north sidewalk on State street. The brick street and walkway were reconstructed by appellant substantially as they were before, the bricks reset, and the cracks filled with sand, and the same tamped down, except that the bricks were not set as close as practicable, were laid loosely, and the "gravel was not tamped solid enough." On the above date there were lights in a store building at the northeast corner of this street crossing, which lighted the crossing where appellee was injured, and also lights at the southeast corner, and a street lamp burning at the southwest corner, which lighted the crossing; also a red lantern lighted, about two feet high, and placed on top of a barrel between the rails of the track, and about a foot north of the edge of the cross-walk; also a red light burning at the edge of the south cross-walk. Appellee lived on Pendleton avenue, about one-half square north of the crossing, and in front of her residence the avenue had been excavated for about two weeks prior to the above date; that frequently before that time she had observed the red signal lights placed on the

excavation at different points, and had observed the nature and character of the work, and had observed also that the brick paving had been removed at the street crossing, and that the excavation had been made for the construction of the road. About 8:30 o'clock in the evening, appellee walked from her home to the street crossing to the north walk on State street, and started directly across Pendleton avenue, walking in the usual and ordinary way, looking beyond Pendleton avenue at the lights along State street, and westward along the north side of State street. While crossing Pendleton avenue, appellee did not look down and observe the character and condition of the cross-walk at any time after entering upon the same, and before she fell. There was nothing to prevent her from seeing the red signal light, which she knew indicated danger. She also knew that the presence of the red lights meant the exercise of care when traveling in the vicinity of such lights, and that she was required to exercise the faculty of sight when traveling in their vicinity; that she did not look at any time before crossing Pendleton avenue to see whether there was any signal light near the north cross-walk; that while crossing she did not look down and observe where she was stepping at any time before she received the fall, and that at the time she was possessed of good eyesight; that at the time and before she received the injury, and while she was walking across the crossing, she did not look and observe the condition of the street and the character of the walk that she was traveling over; that within fifteen or twenty minutes, and again within an hour, after receiving the injury, she crossed the street without hindrance and without accident.

The above answers to interrogatories show that for some time prior to the injury appellee knew the nature of the work that was being done in the street; that she had seen the red lights and knew their significance; that one of these lights was at the time burning near the edge of the walkway over which she was passing, and that there was

nothing to prevent her from seeing it. ⁻There were lights also at three different corners of the crossing; she knew the crossing had been torn up; there was nothing to prevent her seeing the red signal light, which she knew indicated danger, and which she also knew meant the exercise of care and the ᵗfaculty of sight when traveling in the vicinity of such a light. It also appears that she proceeded over the walkway without giving heed to the conditions surrounding her and without looking to see where she was walking.

The jury, by its general verdict, determined every question essential to appellee's right of recovery in her favor. If the general verdict, with every reasonable intendment in its favor, is to be overthrown by the special answers to interrogatories, it must appear that the jury's finding upon particular questions of fact is so clearly antagonistic to the general verdict that the two can not coexist. The answers to interrogatories must be construed strictly, and without favorable intendment, against the moving party. If the answers are inconsistent as between each other, or if the antagonism between them and the general verdict is not such as to be beyond the possibility of removal by any evidence admissible under the issues, the general verdict must stand. *Citizens St. R. Co.* v. *Hoop,* 22 Ind. App. 78; *Fitzmaurice* v. *Puterbaugh,* 17 Ind. App. 318; *McCoy* v. *Kokomo R., etc., Co.,* 158 Ind. 662.

The answers do not find the exact nature of the defect that caused the injury, nor do they find that it was such that a person must have seen it when passing over the walkway. It appears that appellant had reconstructed the crossing, had replaced the brick, and had left the walkway open for travelers to pass over. There were no red signal lights upon the crossing itself. There was nothing upon or near the crossing to warn a traveler that the crossing itself was dangerous. Appellee had the right to presume that the crossing was safe, and, in the exercise of due care, to act upon that presumption. The jury found by their general

verdict that in passing over the crossing appellee exercised such care as a reasonably prudent person would exercise under like circumstances, and there is evidence authorizing such a finding. Nor is there anything in the answers to interrogatories that is antagonistic to, or in irreconcilable conflict with, such finding. There is evidence that the surface of the street appeared to be restored as before it was taken up, and that appellee did not and could not see that the brick upon which she stepped was loose and dangerous; that the bricks when replaced were not placed as closely together as they should have been; that they were laid loosely, and the gravel not tamped sufficiently, and that when appellee stepped upon them her foot went down sidewise between the bricks, causing her to fall. The motion for judgment upon the answers was properly denied.

No harmful error was committed against appellant in striking out the answer of a witness to the effect that he never missed the red lights at the crossing, and in not permitting appellant to prove by the same witness that he drove back and forth over the crossing and noticed the red lights there, and that they were never absent to his knowledge, for the reason that the jury found as a fact that the red lights were burning at the crossing the night of the injury.

Objection is made to certain evidence introduced for the purpose of showing that appellant was notified of the condition of the crossing. We fail to see how any harmful error was committed in this respect. The appellant company was sole defendant. The condition of the crossing resulted from the alleged unskilful reconstruction of the crossing by appellant after it had been torn up for the construction of its tracks. It was the duty of the company to restore the street as nearly as practicable to its former condition. It was bound to know whether it had done so. Had the municipality been joined as a defendant, a different question might be presented. The evidence in-

troduced in support of the averments of the complaint was to the effect that, after the bricks had been taken up in the street and track constructed, the bricks had been unskilfully and insecurely replaced by appellant, and left in an unsafe condition.

Judgment affirmed.