## CITY OF LOGANSPORT *v.* SMITH, ADMINISTRATOR.

[No. 6,859. Filed February 1, 1911.]

1. NEGLIGENCE.—*Telephones.—Railroads.—Right to Operate within City.—Trespassers.—Complaint.*—A complaint by the administrator of a railroad employe killed by the alleged negligence of defendant city in maintaining its light wires too close to the railway company's telephone wires, by reason whereof decedent in using the telephone was instantly· killed, need not allege that the city granted to the railway company a right to construct its telephone system, since in no event would such employe be a trespasser in his relations to the city; and the city would owe him the duty of exercising reasonable care for his safety. p. 68.

2. NEGLIGENCE.—*Electric Lights.—Cities.—Duty.*—It is the duty of a city in operating an electric plant to use ordinary care—care proportionate to the danger therefrom—to prevent injury to any one. pp. 68, 71.

3. NEGLIGENCE.—*Cities.—Electric Lights.—Railroads.—Telephones. —Injury from Use of.—Complaint.*—A complaint alleging that while engaged in the discharge of his duty as a railroad employe the plaintiff's decedent was using a railroad telephone and that he received a fatal shock therefrom, sufficiently shows that he was in the discharge of his duty as an employe at the time of his death. p. 71.

4. NEGLIGENCE.—*Cities.—Electric Lights.—Telephones.—Injuries to Persons Using.*—The relative positions of telephone and electric light wires are not controling in a case where the user of the telephone wire is injured by reason of negligence in constructing such light plant. p. 72.

5. NEGLIGENCE.—*Concurrent.—Railroads.—Cities.* — A city whose negligence in constructing its light plant contributed to the killing of a railroad employe cannot escape liability on the ground that the railroad company was also guilty of negligence contributing to such killing. p. 73.

6. TRIAL.—*Verdict.—Interrogatories.—Conflict.*—The general verdict is a finding for the prevailing party on every material fact; and to overthrow such verdict the answers to the interrogatories to the jury must be irreconcilable therewith. p. 74.

7. NEGLIGENCE.—*Contributory.—Electric Lights.—Charging Telephone Wires.—Evidence.*—Evidence that a co-servant told plaintiff's decedent, prior to his using the telephone which fatally shocked him, that such co-servant had touched the "clapper" of a telephone and had received a shock, does not show that such decedent was guilty of contributory negligence in the use thereof, where there was no evidence that the telephones were connected on the same wire, nor that decedent knew of the proximity of the light and telephone wires. pp. 74, 78.

8. NEGLIGENCE.—*Assumption of Risk.—Telephones.—Charged by Light Wires.*—An employe of a railroad company, in the use of its telephone, does not assume the risk of the city's negligence in constructing its light plant so as to charge the telephone wires. p. 74.

9. NEGLIGENCE.— *Concurrent.— Intervening Causes.— Railroads. —Electric Lights.*—A city which constructed its light wires in such a manner that by the sagging of a railroad company's telephone wires such telephone wires came in contact with said light wires and became charged, is concurrently negligent with such railroad company, and is liable separately, or jointly with such railroad company, for the death of a railroad employe using the railroad telephone, the negligence of the railroad company not constituting an intervening agency. p. 74.

10. NEGLIGENCE.—*Intervening Agents.—Anticipation of.—Electric Lights.—Telephones.*—A city in constructing its electric light

plant is required to anticipate the construction of telephone lines, and the sagging thereof, and cannot avail itself of the doctrine of a responsible, intervening agent, where injury is caused by its charging the telephone wires. p. 75.

11. RAILROADS.— Grants.— Rights of Way.— Incidents. — Telephones.—A grant to a railroad company of a right of way carries by implication the right to construct telegraph and telephone lines to be used in connection with such railroad. p. 76.

12. APPEAL.—Harmless Error.—Trial.—Instructions.—A judgment will not be reversed for the giving of an erroneous, harmless instruction. p. 78.

13. TRIAL.—Instructions.—Duplication.—It is not erroneous to refuse to duplicate instructions. p. 79.

14. TRIAL.—Admission of Evidence.—Order of.—The order in which evidence is admitted is largely discretionary with the trial court. p. 79.

From Cass Circuit Court; Frank D. Butler, Special Judge.

Action by Lyman O. Smith, as administrator of the estate of David J. Smith, deceased, against the City of Logansport. From a judgment for the plaintiff, defendant appeals. Affirmed.

George W. Funk, Antrim & McClintic and E. P. Kling, for appellant.

R. J. Loveland and Kistler & Kistler, for appellee.

FELT, J.—This is an appeal from the Cass Circuit Court from a judgment in favor of appellee in the sum of $1,500.

The errors assigned are the overruling of the demurrer to the first, second and third paragraphs of complaint, the appellant's motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, the motion for a new trial and the motion in arrest of judgment.

The first paragraph of the complaint is for the alleged negligence of appellant in constructing an electric light plant in the city of Logansport, resulting in an injury causing instant death to appellee's decedent, David Judson Smith, an employe of the Pittsburgh, Cincinnati, Chi-

cago & St. Louis Railway Company in the capacity of switchman or yard brakeman. It is alleged, in substance, that appellant owned and operated an electric light plant in said city, and in so doing maintained throughout said city electric light wires highly charged with electricity, which were supported on poles about fifteen or twenty feet above the surface of the street; that, in placing said poles along Berkley street, appellant "knowingly erected and maintained them under, near and adjacent to numerous telephone wires similarly supported on poles on and along Canal street," which street crossed said Berkley street; that telephones were connected with said wires and used by the employes of said railway company in conducting its business; that said electric light wires on August 20, 1905, and during all the time appellant operated its electric light plant, were highly charged with a dangerous and deadly current of electricity, and appellant carelessly and negligently, with full knowledge of the danger occasioned thereby, placed and maintained said wires in such position and proximity to said telephone wires that the dangerous and deadly current carried over appellant's electric light wires was liable to be, and was by one of the city's wires, diverted and communicated to one of the telephone wires of said railway company, to and into the telephone apparatus located in the yards of said company, where decedent was employed; that on said day decedent, while engaged in the discharge of his duties as such employe, without any knowledge or means of knowing the danger created by the position of the city's electric light wires and said telephone wires, carefully and prudently took hold of one of said telephones for the purpose of using it, and while so doing, by reason of the carelessness and negligence of appellant, in so constructing and maintaining its electric light wires, as aforesaid, received a charge of electricity, which then and there and thereby passed into and through his body, causing instant death.

The second and third paragraphs of complaint are substantially the same as the first paragraph, except that the charge is negligence in maintaining the electric light wires for a long time previous to the accident, and at the time of the accident, in the negligent and dangerous manner described in the first paragraph of complaint.

The ruling upon the demurrer to the several paragraphs of complaint may be considered together, as it is quite evident that if one is good all are good.

The principal objections raised are, (1) that there is no averment showing that appellant granted to the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company the right to construct and maintain a private telephone system upon its streets, and (2) that appellant owed no duty to decedent, except to avoid a wilful injury.

We do not think the complaint bad for failing specifically to aver a grant from appellant to the railway company of the right to maintain its private telephone

1. system upon its streets. It appears from the complaint that the railway company was engaged in operating a line of railway within and through the city of Logansport, and that in connection therewith it operated railway yards at a point near the intersection of said Berkley and Canal streets; that the telephones were used by the employes of said company in conducting its business, and that decedent at the time of his injury was in the employ of said company and engaged in the discharge of his duties as such employe. This shows that he was in a place where he had a right to be, and was not a trespasser. In such situation appellant owed to him the duty not to injure him, if such injury could be avoided by a reasonable degree of care, and this duty did not depend upon any franchise right of his employer, the railway company. The city, by the averments of the complaint, is shown to have been

2. engaged in the electric light business, using a dangerous and deadly agent—electricity—and to have

negligently permitted it to escape from its wires, to the fatal injury of decedent.

The case of *Central Union Tel. Co.* v. *Sokola* (1905), 34 Ind. App. 429, was for the negligent killing of a person caused by contact with a telephone wire which lay across a charged and uninsulated electric light wire. Liability was denied by appellant because the wire was on private property. The court, by Judge Robinson, on page 434, said: "It is true it was on private property, but it was a place where people had a right to go, and where they were liable to go. There is reason in such cases for making some distinction between liability for injuries to persons on private property and liability for injuries to persons using a public street. But if the person injured is not a trespasser, and has a right to be where he is when injured, the duty must extend to him to maintain the wires in a safe condition, although the wires are maintained by the company across private property. Keasbey, Electric Wires (2d ed.) §247."

In 1 Thompson, Negligence (2d ed.) §696, it is said: "One who artificially collects upon his own premises a substance which, from its nature, is liable to escape and cause mischief to others, must use reasonable care to restrain it, and is answerable for any damage occasioned to others through its escape from a want of such care." To the same effect are the following authorities: 1 Thompson, Negligence (2d ed.) §801; *City Electric St. R. Co.* v. *Conery* (1895), 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. 262; *Defiance Water Co.* v. *Olinger* (1896), 54 Ohio St. 532, 44 N. E. 238, 32 L. R. A. 736; *Guinn* v. *Delaware, etc., Tel. Co.* (1905), 72 N. J. L. 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988, 111 Am. St. 668; *Will* v. *Edison Electric, etc., Co.* (1901), 200 Pa. St. 540, 50 Atl. 161, 86 Am. St. 732; *Van Winkle* v. *American Steam Boiler Co.* (1890), 52 N. J. L. 240, 19 Atl. 472.

In the case of *City Electric St. R. Co.* v. *Conery, supra,*

the court said: ''The main difference between the case last cited and this is, the electricity was communicated to the party injured in the former by the electric company's own wire, and in the latter by the wire of another, but the principle upon which the liability is based is the same in both cases. All persons have the right to use the streets, in or over which the wires were suspended, as public highways. Subjecting the dangerous element of electricity to their control, and using it for their own purposes, by means of wires suspended over the streets, it is their duty to maintain it in such a manner as to protect such persons against injury by it to the extent they can do so by the exercise of reasonable care and diligence. This duty is not limited to keeping their own wires out of the streets, or other public highways, but extends to the prevention of the escape of the dangerous force in their service through any wires brought in contact with their own, and of its transmission thereby to any one using the streets. Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended.''

These authorities fully answer appellant's objection that appellee's decedent was an employe of the railway company, and that the city did not owe him the duty of furnishing him a safe place in which to work. This is true as a general proposition, but it does not change appellant's duty to the public to use care in controlling the dangerous current of electricity it was carrying over its wires. This duty extended to decedent, and his relations to the railway company did not deprive him of that protection or relieve appellant from liability if that duty was neglected.

The cases where no public duty relative to some dangerous substance or agency is shown, and cases applying the doctrine that one who lets or sells property for use is not responsible to third persons for injuries sustained by reason of defects therein, when carefully considered, are found

not to conflict with our holding, and in most of them the exception in regard to dangerous substances or agencies is expressly mentioned. This is true in the case of *Griffin* v. *Jackson Light, etc., Co.* (1901), 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, 92 Am. St. 496, relied upon by appellant upon this proposition.

In 1 Thompson, Negligence (2d ed.) §831, this distinction is recognized: "The boundary line excluding this class of actions was said to be this: that where there is no privity of contract between the plaintiff and defendant, and no public duty has been broken by the latter, the plaintiff cannot recover."

The further objection is urged to the second paragraph of the complaint, that it does not aver that when appellee's decedent received the fatal charge of electricity he was engaged in the discharge of his duties as an employe of the railway company. The form of the averment of this fact is not to be commended, but we think a fair construction of the whole paragraph shows that he was so engaged at the time. It clearly appears that he was in a place where he had a right to be, and, under the authorities already cited, we think the paragraph states a cause of action.

In the case of *Guinn* v. *Delaware, etc., Tel. Co., supra,* in discussing the duty owing to third persons not at the time in the exercise of any legal right, the court said: "That in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, *ipso facto,* imposes as a public duty the obligation to exercise such care and skill. The test of the defendant's liability to a particular person is whether injury to him ought reasonably to have been anticipated. In the present case the guy wire was stretched over an open field, across which people were accustomed to travel without objection by the

landowner. The adjoining field was used as a ball ground. It was probable that if the guy wire broke some one crossing the field would come in contact with it. That whoever did so was a trespasser or a bare licensee, as against the landowner, cannot avail the defendant. If a bare licensee, he would still be there lawfully. If a trespasser, his wrong would be to the landowner alone, not a public wrong nor a wrong to the defendant.''

The doctrine of this case goes further than our holding, for decedent was not a mere licensee, nor was he a trespasser. He was engaged in a lawful undertaking in a place where he had a right to be.

Considering the danger attending the use of wires highly charged with electricity and the resultant duty to the public, we find no conflict in the decisions cited by appellant's learned counsel and the cases showing liability for negligence in so constructing or maintaining electric wires as to permit the current to escape to the injury of others. The care must at all times be proportionate to the danger. *City Electric St. R. Co.* v. *Conery, supra; Denver, etc., Electric Co.* v. *Simpson* (1895), 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566; *Will* v. *Edison Electric, etc., Co., supra;* Keasbey, Electric Wires (2d ed.) §§238-252; 1 Thompson, Negligence (2d ed.) §797.

The relative positions of the telephone and electric light wires are not controling. The fact that appellant strung its wires at the time and in the manner shown by the evidence in this case, or the fact that the railway company may have failed properly to guard its telephone wires from contact with the electric light wires, considered in connection with the knowledge of the existing conditions on the part of appellant, cannot shield the city from liability on account of its alleged negligence in maintaining its said wires in a position likely to result in injury to persons entitled to protection from the dangerous agency employed. *City Electric St. R. Co.* v. *Con-*

*ery, supra; Hebert* v. *Lake Charles, etc., Water-Works Co.* (1903), 111 La. 522, 35 South. 731, 100 Am. St. 505, 64 L. R. A. 101; *McKay & Roche* v. *Southern Bell Tel. Co.* (1895), 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. 59; *Illingsworth* v. *Boston Electric Light Co.* (1894), 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552.

The fact that the railway company, the employer of appellee's decedent, may have been guilty of concurrent negligence in so placing and maintaining its telephone wires upon the street, as alleged, may show the city and railway company to be joint tort feasors, but cannot deprive appellee of the right to recover for actionable negligence on the part of appellant. *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583, 591, 6 L. R. A. 193; *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299; *Richmond Gas Co.* v. *Baker* (1897), 146 Ind. 600, 606, 36 L. R. A. 683; *Town of Knightstown* v. *Musgrove* (1888), 116 Ind. 121, 9 Am. St. 827; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172; *City of Elwood* v. *Laughlin* (1902), 29 Ind. App. 667; 1 Thompson, Negligence (2d ed.) §499, *et seq.; Lucas* v. *Pennsylvania Co.* (1889), 120 Ind. 205, 16 Am. St. 323.

The fact that the suit is brought against one tort feasor only where concurrent negligence is shown contributing to the injury, is not ground for defense to such action. *South Bend Mfg. Co.* v. *Liphart* (1895), 12 Ind. App. 185; *Knouff* v. *City of Logansport* (1901), 26 Ind. App. 202, 84 Am. St. 292.

It is contended by appellant that the court erred in overruling its motion for a judgment in its favor on the answers to the interrogatories, nothwithstanding the general verdict. In support of this contention it is asserted that appellee's decedent had knowledge before he used the telephone, resulting in his injury, that it was heavily charged with electricity, and that in so using it he was guilty of contributory negligence,

The general verdict finds every issuable fact essential to appellee's recovery, and cannot be disturbed by the answers to the interrogatories, unless they are in irreconcilable conflict therewith. We have examined the evidence upon this subject, and it discloses that on the day of the fatal accident, and but shortly before it occurred, a fellow workman informed decedent that he had touched his finger to the "clapper" of a telephone and had received a shock, but no injury was shown to have resulted therefrom. The telephone so touched was in another part of the railway company's yards, and some two squares away from the telephone which decedent attempted to use when he was killed.

Decedent undertook to use the telephone in the usual and ordinary way, and while so doing he received such a powerful current of electricity that his death resulted instantly. The current was shown to have been of from 1,100 to 1,150 voltage.

There is no evidence showing that he had any knowledge of the connection between the telephone touched by his fellow workman and reported to him and the one which he attempted to use. Neither is it shown that he had any special knowledge of electricity or of the location of the telephone wires with reference to the electric light wires of appellant. The evidence comes far short of showing such knowledge on his part as to make his attempted use of the telephone contributory negligence.

Neither can it be said as a matter of law against the general verdict, on the facts of this case, that decedent, in the use of the telephone, assumed the risk. *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583.

It is further contended by appellant that the answers to interrogatories show that the private telephone wires of the railway company, the employer of decedent on the date of the injury, were by said railway company permitted to sag and come in contact with the

wires of appellant, and thus became charged with the electricity which caused the death of decedent; and, further, that this negligence of the railway company was an intervening, responsible agent which cut off the line of causation and relieved appellant from any liability on account thereof.

The facts, which appellant relies upon to show an intervening, responsible agent cutting off the line of causation from the alleged negligence of the city, do not show such intervening agent, but tend to show concurrent negligence on the part of the city and the railway company, making them joint tort feasors.

Appellee in such situation had the right to sue either party or both parties, and appellant cannot be relieved by showing that the railway company is also liable.

The cases cited upon the proposition of an independent, intervening, responsible agent's cutting off the line of causation, in our view of this case are not in point, and need not be further considered.

But if it be conceded (which we cannot do) that the negligence of the railway company in allowing its telephone wires to sag and come in contact with the electric light wires of the city brings the case within the rule of an intervening agent's cutting off the line of causation, a well-recognized exception to the rule, when applied to the facts of this case, will prevent its affording appellant any relief.

In the case of *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202, 210, this court said: "If the circumstances are such that the intervention of the independent agent ought to have been foreseen, then such intervention does not operate to release the original wrongdoer from the consequences of his negligence."

The length of time the telephone wires had been suspended upon the poles, with knowledge on the part of the city of their close proximity to its electric light wires, the

tendency of wires to sag, the effect of heat and other elements upon suspended wires, and the danger of contact with the other wires when carrying high voltage currents of electricity, certainly indicate that the thing which did occur in this case was such as should have been foreseen, and would have been if that care and diligence required by the law had been exercised by appellant. 1 Thompson, Negligence (2d ed.) §§54, 58; *Louisville, etc., R. Co.* v. *Lucas supra; Reid* v. *Evansville, etc., R. Co.* (1894), 10 Ind. App. 385, 396, 53 Am. St. 391.

In the case of *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299, 305, this court said: "It is well settled that where the plaintiff was injured, without his fault, by the concurrent negligence of the defendant and a third person, not subject to the plaintiff's control or direction, the defendant cannot avail himself of the negligence of such third person as a defense." *Town of Knightstown* v. *Musgrove, supra; Louisville, etc., R. Co.* v. *Davis* (1893), 7 Ind. App. 222; *Grimes* v. *Louisville, etc., R. Co.* (1892), 3 Ind. App. 573.

The alleged error in overruling the motion for a new trial is largely disposed of by the holdings already announced, but here, as well as upon the motion for judgment on the interrogatories, the proposition is urged that in the absence of any express grant from appellant to the railway company of the right to use its streets for telephone purposes, it was a trespasser, or at most had only a permissive right to the use of the streets for that purpose.

In the case of *Prather* v. *Western Union Tel. Co.* (1883), 89 Ind. 501, 524, our Supreme Court, quoting from *Babcock* v. *Western R. Corp.* (1845), 9 Met. (Mass.) 553, 43 Am. Dec. 411, said: "It is a well-known and reasonable rule, in construing a grant, that all means to attain it, and all the fruits and effects of it, are granted also."

It has been held that the erection of telegraph poles and wires is not an additional servitude, although not expressly mentioned in the grant to a railway company.

The operation of telegraph and telephone lines and instruments is an incident to the operation of railroads, and is permissible by virtue of the implied power under an express grant giving authority to operate a railroad. 1 Elliott, Railroads §41; *Prather* v. *Western Union Tel. Co., supra; Pittsburgh, etc., R. Co.* v. *Shaw* (1898), 36 Am. and Eng. R. R. Cas. 453; *Marietta, etc., R. Co.* v. *Western Union Tel. Co.* (1882), 10 Am. and Eng. R. R. Cas. 387; *Cleveland, etc., R. Co.* v. *Huddleston* (1899), 21 Ind. App. 621, 69 Am. St. 385.

The evidence shows that the city of Logansport in 1859 granted to the predecessor of the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, and that the latter company succeeded thereto, the right to construct and maintain railway tracks and yards in said city, and over and along the particular streets mentioned in appellee's complaint.

The evidence further shows that the city of Logansport placed electric light wires along Berkley street in the year 1895, and over the tracks of the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, and that said company has maintained wires, supported by poles, along Canal street and across Berkley street for about thirty years; that in 1905, at the time of the accident, there were thirty wires at the crossing of Canal and Berkley streets; that a part of these were telephone and a part telegraph wires, and that the telephone wires were located on the lower arm on the south side of the pole; that the telephone wires in question in this suit were placed on the lower crossarm in December, 1899, and that there had been no change in the location of the wires from that date to August 20, 1905, when decedent was killed.

The evidence also shows that employes of the electric light department of appellant knew of the existence and location of these wires for many years before the accident.

It was agreed by the parties that appellant had been engaged since 1895 in the manufacture and distribution of electricity for lighting the streets of the city, public buildings and for private consumption.

Under the authorities already cited, we think we are warranted in holding that, for the purposes of this case, the railway company was not a trespasser upon the streets of the city of Logansport on account of the erection and maintenance of its telephone wires in connection with its business as a railway company.

Furthermore, as already shown, the relation of decedent to the railway company as an employe was not such as to impute to him any negligence of the company in so 7. maintaining its telephone wires, and the duty which the city owed to the public to use care in the control and management of the electricity which it was using extended also to decedent.

The decision of the questions already announced disposes of all the questions raised by the motions for a new trial and in arrest of judgment, except the objections to certain instructions and to the admission of certain evidence over the objection of appellant.

The objections to instructions given and refusal to give certain instructions tendered are numerous. We have carefully considered them, and find that the principal objections are based upon the view of the law applicable to this case, as announced by appellant's learned counsel, which we have already decided adversely to their contention.

There is ground for criticism of the phraseology of some of the instructions given, but, on the whole, they 12. state the law correctly and fairly to both parties. The errors pointed out, if conceded to be errors, could not possibly have misled the jury, and were there-

fore harmless. The court did not err in refusing instructions tendered by appellant, for the reason that the jury was fully instructed by other instructions given covering all the issues of the case.

The admission of testimony in rebuttal from a city councilman, tending to show notice to the city of the occupancy of its streets by the railway company with its telephone wires, was not erroneous. The order of admission of testimony is within the sound discretion of the trial court, and there is no showing that appellant was in any way harmed thereby.

Considering the other testimony in the case, it is quite clear that, even if erroneous, the admission. of this testimony was harmless.

We find no available error in the record.

Judgment affirmed.